UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00337-GNS-RSE

FREDRICK DAVIS                                                                                   PETITIONER

v.

KATHY LITTERAL, Warden                                                                    RESPONDENT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner's Objection (DN 28) to Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation ("R. & R.") (DN 20) recommending that his Petition for Writ of Habeas Corpus be denied. For the reasons provided below, the objection is **OVERRULED**, the R. & R. is **ADOPTED**, and the petition is **DENIED**.

### I.     BACKGROUND

In 2011, Petitioner Frederick Davis ("Davis") was convicted by a jury in Jefferson County, Kentucky of murder, two counts of wanton endangerment in the first degree, and tampering with physical evidence. (Pet. 1, DN 1). Pursuant to 28 U.S.C. § 2254, Davis petitioned this Court for habeas relief. (Pet. 1).

The Magistrate Judge incorporated the Kentucky Supreme Court's factual summary in the R. & R., and this Court will do the same, as Davis does not contest the pertinent facts. As the Court stated:

> Latosha Owens [("Owens")] and James Allen [("Allen")] had an on-and-off romantic relationship for several months in late 2008. She had a similar relationship with Appellant, Frederick W. Davis, during this same period. Davis was bothered by Owens' relationship with Allen. Even after Owens had ended the

relationship with Allen and resumed her relationship with Davis, Davis was still angry that she had apparently dated both men simultaneously for a short time.

Tensions between the two men heightened when Allen went to Owens' apartment on February 2, 2009, and broke a window. Owens' young son was in the house at the time. Davis considered the boy to be his own, though he was not his biological father. Because of his affection for the child, Davis was made especially angry by the vandalism. In his own words, Davis felt that Allen had disrespected him by endangering the boy. In a text message, he asked Owens for Allen's phone number in order to scare him. Davis wrote to Owens that he wanted to "nock (sic) him off."

The next day, Davis bought a gun from a friend. The following day, February 4, Davis spoke with Owens several times on the phone and made arrangements to take her to the grocery store that evening. Later, Owens sent Davis a text message asking where he was. Via another text message, Owens told Davis that Allen was at her apartment and asked him to "come on" and "hurry up now." Davis believed that Owens was afraid and wanted him to come to her apartment right away.

When Davis arrived at Owens' apartment building, he saw Allen standing near a window. Davis asked Allen if he was looking for Owens, who was inside the apartment. Allen responded "yeah," but turned and slipped on some ice. As he lay on the ground, Davis shot Allen seven times. Allen bled to death as a result of the multiple gunshot wounds. One of the shots fired went through the window of a neighboring apartment belonging to Charlotte Moore. Davis fled the scene and threw the gun into a sewer.

Davis was taken into custody several hours later. Detective Kristin Downs [("Downs")] interviewed Davis, during which he explained that he went to Owens' apartment at her request because she was afraid of Allen. Davis also revealed his anger about Owens' relationship with Allen and his feeling that Allen had disrespected Owens' child by breaking her window. Davis was subsequently arrested and charged with murder, tampering with physical evidence, and two counts of wanton endangerment in the first degree. At trial, Owens testified on Davis' behalf.

She claimed that she was afraid of Allen following the incident on February 2. When he arrived on the night of the murder, Allen was banging on her door, which frightened her, so she texted Davis for help. However, on cross-examination, Owens acknowledged that she had spent time with Allen earlier that morning and that Allen later sent her a text message saying he "had fun." When she departed from Allen on the morning of the murder, Owens admitted that they hugged and kissed goodbye. She also conceded that she did not call the police when Allen started banging on her door, though she did call 911 two nights earlier when he broke her window.

> Davis was found guilty on all counts. The jury recommended a combined sentence of thirty-seven (37) years, which the trial court adopted.

*Davis v. Commonwealth*, No. 2011-SC-000255-MR, 2012 WL 5289407, at *1-2 (Ky. Oct. 25, 2012) (*Davis I*). The Kentucky Supreme Court affirmed Davis' conviction and sentence. *Id.* Davis then filed a *pro se* motion in Jefferson Circuit Court pursuant to Kentucky Rule of Criminal Procedure 11.42, which denied his ineffective assistance of counsel claim. *See Davis v. Commonwealth*, No. 2015-CA-000450-MR, 2017 WL 4217354, at *1 (Ky. App. Sept. 22, 2017) (*Davis II*).

## II. JURISDICTION

This Court has jurisdiction to entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court pursuant to 28 U.S.C. § 2254.

## III. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a "difficult to meet and highly deferential standard . . . ." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted) (internal citation omitted) (citation omitted). Legal conclusions made by state courts are also given substantial deference

3

under the AEDPA; the Supreme Court has concluded that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fair minded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

When reviewing the Magistrate Judge's report and recommendation regarding a prisoner's petition for a writ of habeas corpus, "[a] judge . . . shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A reexamination of the same argument that was presented to the Magistrate Judge without specific objections "wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009) ("[W]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (internal quotation marks omitted) (citation omitted)). New arguments raised for the first time in a petitioner's objection to a Magistrate Judge's report and recommendation are considered waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Courts have applied this general rule in the habeas corpus context. *See Brewer v. Bottom*, No. 10-26-KSF, 2012 WL 404878, at *8 (E.D. Ky. Feb. 8, 2012) (rejecting the petitioner's claim in habeas petition raised for the first time in objections to the report and recommendation and noting that "[t]hese reasons alone are sufficient grounds to reject [the petitioner's] objection.").

## II. DISCUSSION

### A. Ground I: Improper Limitation of Voir Dire

Davis argues that the trial court's limitation of defense counsel's questions regarding self-defense during voir dire was improper. (Pet'r's Obj. 2, DN 24).

As the Magistrate Judge points out, the Kentucky Supreme Court upheld the trial court's voir dire limitation because defense counsel was permitted to ask the jury questions related to self-defense but was precluded from asking the jury about a specific hypothetical. (R. & R. 7). Defense counsel "posed a hypothetical question, asking whether it would constitute self-defense if she walked out of the courtroom and stabbed someone in the lobby area." *Davis I*, 2012 WL 5289407, at *2. As the Kentucky Supreme Court summarized:

> The trial court warned defense counsel that she was delving into a difficult area of the law and cautioned her against asking the jurors to speculate as to what an "initial aggressor" might be. The court specifically told her, however, that she could explore the jury's feelings towards self-defense in general. Defense counsel then continued with her questioning and asked jurors if they could consider self-defense if the trial court instructed on it.
>
> Finally, she asked the panel: "If you find that Mr. Davis . . . was defending himself, or defending others, what must your verdict be?" The trial court sustained the Commonwealth's objection to the phrasing of this question and reminded defense counsel that she could ask if the jurors could follow the court's instructions. Defense counsel rephrased the question as suggested and asked no further questions. Davis now argues that he should have been permitted to question jurors more extensively about the right of self-defense and defense of others in order to expose any prejudice or bias.

*Id.*

In support of his Petition, Davis asserts that the Kentucky Supreme Court erred by not finding that the trial court improperly limited voir dire regarding the jurors' beliefs on self-defense and the defense of others. (Pet'r's Mem. Supp. Pet. 8-9, DN 14). In his objection to the R. & R., Davis contends that the questions asked by defense counsel to the jury were proper and should not

have been limited. (Pet'r's Obj. 5-8). "The holdings of the Supreme Court governing questions a defendant's counsel is constitutionally entitled to ask of potentially biased jurors are narrow . . . ." *Jackson v. Houk*, 687 F.3d 723, 737 (6th Cir. 2012). Regarding voir dire, "the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." *Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991) (citation omitted). The trial court limited counsel's questions that asked the jury to commit to a certain verdict in advance. *Davis I*, 2012 WL 5289407, at *3. "[T]he trial court retains great latitude in deciding what questions should be asked on voir dire." *Mu'Min*, 500 U.S. at 424. A federal habeas court is limited "to enforcing the commands of the United States Constitution." *Id.* at 422 (citations omitted). "A proffered voir dire question is not constitutionally required simply because it 'might be helpful in assessing whether a juror is impartial'; instead a question is constitutionally compelled only where the 'failure to ask [that] question[] . . . render[s] the defendant's trial fundamentally unfair.'" *Beuke v. Houk*, 537 F.3d 618, 637 (6th Cir. 2008) (alterations in original) (citing *Mu'Min*, 500 U.S. at 425-26). In *United States v. Cramer*, 491 F. App'x 520 (6th Cir. 2012), the court found that questions which desired to expound upon the jurors' opinions of self-defense were not constitutionally compelled when they were "tailored to elicit jurors' receptiveness to Defendant's theory of the case, more than the jurors' ability to be fair and impartial." *Id.* at 524.

The Magistrate Judge cites *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), for the proposition that a trial court does not abuse its discretion when it excludes questions relating to specific mitigating factors on voir dire. *See Tipton*, 90 F.3d at 879. Further, "[t]he undoubted fact that such detailed questioning might have been somehow helpful to appellants in exercising peremptory challenges does not suffice to show abuse of the district court's broad discretion in conducting the requisite inquiry." *Tipton*, 90 F.3d at 879. Specific questions that asked jurors to

6

commit to a verdict in advance are not appropriate on voir dire. *Ward v. Com.*, 695 S.W.2d 404, 407 (Ky. 1985). The trial court was within its discretion to restrict the portions of defense counsel's questions which attempted to prompt the jury to commit to a self-defense based verdict or speculate as to what constitutes an initial aggressor before the presentation of any proof.

Davis specifically objects to the Magistrate Judge's exclusion of the portion of the Kentucky Supreme Court's opinion, which stated:

> On appeal, Davis argues that he would have asked additional questions to determine if the panel members had a particular bias concerning the right to defend one's self or others. However, it is unclear exactly what additional questions defense counsel would have asked the panel. For this reason, we are left to speculate as to what the trial court's ruling would have been regarding these additional questions.

*Davis I*, 2012 WL 5289407, at *2. The Supreme Court further addressed Davis' failure to preserve the issue properly pursuant to *Lawson v. Commonwealth*, 53 S.W.3d 534, 540 (Ky. 2001), "[a]t the outset, we note that this issue is not adequately preserved for appellate review. In order to seek review of a limitation placed on voir dire questioning, the aggrieved party must propose the specific question to the trial court and seek a ruling." *Davis I*, 2012 WL 5289407, at *2. As the Magistrate Judge noted, "because the trial court allowed defense counsel to explore the jury panel's general feelings towards self-defense, whether they could consider a theory of self-defense, and whether they could follow the court's instructions, the Kentucky Supreme Court found that there was no error." (R. & R. 7 (citing *Davis I*, 2012 WL 5289407, at *3)).

The Kentucky Supreme Court ruled that the trial court did not abuse its discretion when it limited questions asking potential jurors to commit to an idea or verdict before trial. *Davis I*, 2012 WL 5289407, at *3. This was neither contrary to, nor involved an unreasonable application of, clearly established federal law; likewise the court's determination was not based on an

7

unreasonable application of the facts. 28 U.S.C. § 2254(d). Therefore, Davis will not be afforded relief on his first ground for improper limitation of voir dire.

    B.  **<u>Extreme Emotional Disturbance</u>**

Davis argues that the absence of a jury instruction on extreme emotional disturbance ("EED") prejudiced his trial and rendered it patently unfair. Davis believes this instruction was warranted because Allen had broken a window at Owens' residence and the messages Owens had sent Davis telling him to hurry over to her house. *Davis I*, 2012 WL 5289407, at *3. The Magistrate Judge noted that the EED instruction is only proper if there is evidence supporting the instruction sufficient to determine that Davis was acting under extreme emotional disturbance. (R. & R. 11 (citing *Wellman v. Commonwealth*, 694 S.W.2d 696, 697 (Ky. 1985))). Davis needed to present evidence to show that he was under a "temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986). To determine whether a jury instruction violated federal law, the court determines "whether the instruction was erroneous and, if so, whether the instruction 'so infected the entire trial that the resulting conviction violates due process.'" *Clarke v. Warren*, 556 F. App'x 396, 409 (6th. Cir. 2014) (citation omitted). As Davis admits, it is his responsibility to introduce evidence establishing the affirmative defense of EED. (Pet'r's Obj. 10 (citing *Buchanan v. Kentucky*, 483 U.S. 402, 408 (1987))). As the Kentucky Supreme Court noted:

> While these cumulative events may have supported a finding that Davis acted in protection of Owens, as the defense argued at trial, it does not support the conclusion that Davis was so enraged or inflamed as to overcome his judgment. No evidence of a triggering event was introduced, nor was there any evidence indicating that Davis was acting uncontrollably. In both the interview with

>Detective Downs and the text messages to Owens, Davis expresses his anger at Allen, his intent to confront Allen, and his feeling that Allen had disrespected him.

*Davis I*, 2012 WL 5289407, at *3. The Magistrate Judge referred to the deferential standard afforded the Kentucky Supreme Court on this issue, wherein it is not enough to find error if this court "would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "Evidence of mere 'hurt' or 'anger' is insufficient to prove extreme emotional disturbance." *Talbott v. Commonwealth*, 968 S.W.2d 76, 85 (Ky. 1998) (citation omitted). Davis did not present evidence that he was temporarily rendered so upset that he was unable to control his emotions, leading to Allen's death. *Davis I*, 2012 WL 5289407, at *3. Davis offered the fact that a window had been broken in Owens' apartment, that Owens was afraid of Allen, and text messages from Owens to Davis asking him to come to her residence because of Allen. *Id.* These factors, taken cumulatively, do not rise beyond anger or hurt to meet the requirements of EED. "[B]ecause the evidence presented at trial did not support a jury instruction on . . . extreme emotional disturbance under state law, the failure to so instruct did not rise to the level of a constitutional error." *Shelton v. Seabold*, 198 F.3d 247, 1999 WL 1021750, at *2 (6th Cir. 1999) (citation omitted). Therefore, the Magistrate Judge correctly found that the trial court's holding that the evidence was insufficient, as affirmed by the Kentucky Supreme Court, was not unreasonable in light of the evidence produced at trial and was consistent with clearly established law.

### C. Downs' Testimony

Davis claims that the Magistrate Judge should have found Detective Downs' testimony fundamentally unfair. (Pet'r's Obj. 11). He states:

>Detective Kristen Downs of the LMPD's Homicide Unit specifically testified to the jury during Davis' case that she was allowed to conduct a practice of lying to arrested defendants during interrogation which consists of violation of Davis's U.S.

9

> Fifth & Fourteenth Due Process rights. The magistrate judge should have deemed Downs' testimony as fundamentally unfair and the Kentucky Supreme Court's decision also as egregious resulting in fundamental unfairness to warrant habeas relief. There are documented cases which demonstrate a criminal Defendant having his rights violated when a police or detective lie or give false, misleading statements. Although Davis argued improper opinion evidence the following cases deals with detectives and police officials lying, giving false, misleading statements to obtain a confession.

(Pet'r's Obj. 11) (citation omitted).

Davis had previously argued that Downs' testimony constituted improper opinion testimony, but not this particular point. (Pet'r's Mem. Supp. Pet. 15). Arguments raised for the first time in a petitioner's objection to a Magistrate Judge's report and recommendation are considered waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Courts have applied this general rule in the habeas corpus context. *See Brewer v. Bottom*, No. 10-26-KSF, 2012 U.S. Dist. LEXIS 15478, 2012 WL 404878, at *8 (E.D. Ky. Feb. 8, 2012) (rejecting the petitioner's claim in habeas petition raised for the first time in objections to the report and recommendation and noting that "[t]hese reasons alone are sufficient grounds to reject [the petitioner's] objection."). Davis must show both cause and actual prejudice in order for the court to hear a new argument on collateral attack. *United States v. Frady*, 456 U.S. 152, 164-65 (1982). Davis does neither. As Davis argues a different theory of relief related to Downs' testimony than what he argued to the Magistrate Judge, the Court will not afford relief based on this argument.

### D.  **Ineffective Assistance of Counsel**

Davis claims ineffective assistance of counsel ("IATC") on the grounds that his trial counsel failed to seek instructions on EED (Claim 5) and evidence tampering (Claim 7). (Pet'r's Obj. 12). Specifically, Davis' objection is:

> [I]ssues presented to the magistrate of this issues were, in fact, valid and his habeas corpus petition should have been ruled on in a more favorably manner being that it

10

> was apparent that counsel failed raise a defense on EED and request instructions and failed to make a defense whatsoever on the evidence tampering charge.

(Pet'r's Obj. 12). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the following standard applicable to IATC claims:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687. As noted in the R. & R., "[w]here a jury instruction on an inferior offense is not warranted by the evidence, counsel's failure to request such an instruction does not constitute ineffective assistance." (R. & R. 20 (citing *Harrop v. Sheets*, 430 F. App'x 500, 505 (6th Cir. 2011))). On the failure to seek an EED instruction, the Magistrate Judge stated:

> Whether the undersigned might have come to a different conclusion regarding the evidence is of no moment because it is not within the "province of a federal habeas court to reexamine state-court determinations on state-law questions[;]" rather, the Court is limited to determining whether the Constitution or laws of the United States were violated and is therefore obligated to accept as valid the Kentucky Court of Appeals' interpretation of Kentucky law.

(R. & R. 20 (alteration in original) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991))). The Kentucky Court of Appeals determined that the evidence was not sufficient to warrant an instruction to the jury on the EED claim. *Davis II*, 2017 WL 4217354, at *3. As the U.S. Supreme Court has stated, "[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted).

11

Regarding Davis' claim that his counsel was ineffective for failing to present a defense to the charge of evidence tampering, the Magistrate Judge noted:

> The Warden argues that Davis' confession to disposing of the weapon he used to murder Allen rendered any defense to the tampering charge meritless. . . .
>
> . . . Davis does not prove the Kentucky Court of Appeals' decision was contrary to or an unreasonable application of *Strickland*. In fact, Davis' Petition fails to specifically address an argument for either the performance or prejudice prong of *Strickland*. Rather, the bulk of what the Court shall construe as Davis' argument is nothing more than a recitation of Davis' violation of the charge of tampering with physical evidence.

(R. & R. 24). Davis has not provided a more detailed objection to the Magistrate Judge's report and recommendation on his IATC evidence tampering claim, nor does he explain how either prong of *Strickland* is met when Davis admitted to the elements of evidence tampering. Under the circumstances, this court is in no position to disturb the Kentucky Court of Appeals ruling on this issue. Davis will not be granted relief based on alleged ineffective assistance of counsel. The claim will therefore be denied.

### E.     Certificate of Appealability

Magistrate Judge Edwards recommended that this Court deny Davis a Certificate Appealability with respect to each of his claims, to which he did not object. For this reason, the court will deny a certificate of appealability.

### III.     CONCLUSION

For the reasons provided above, **IT IS HEREBY ORDERED** as follows:

1.     Petitioner's Objection (DN 28) is **OVERRULED**, and the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 20) is **ADOPTED.**

2.     Petitioner's Petition for Writ of Habeas Corpus (DN 1) is **DISMISSED**.

3. The issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) is **DENIED**.

4. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

April 27, 2022

cc: counsel of record
Petitioner, *pro se*